IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

December 6, 2024

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**DAVID M.,**
**Respondent Below, Petitioner**

**v.) No. 24-ICA-217** (Fam. Ct. Taylor Cnty. Case No. FC-46-2011-D-17)

**WEST VIRGINIA DEPARTMENT OF HUMAN SERVICES**
**BUREAU FOR CHILD SUPPORT ENFORCEMENT,**
**Petitioner Below, Respondent**

**and**

**NICOLE H.,**
**Respondent Below, Respondent**


**MEMORANDUM DECISION**

Petitioner David M.[1] appeals the Family Court of Taylor County's April 25, 2024, Final Order as to Petition for Modification, its May 7, 2024, order, denying his motion for reconsideration, and its June 11, 2024, order, denying his second motion for reconsideration. The primary issues on appeal are the child support calculation and alleged improper conduct by the family court. Neither the Respondent Nicole H. nor the Bureau for Child Support Enforcement participated in the appeal.[2] The Guardian ad Litem ("GAL") filed a summary response.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

David M. ("Father") and Nicole H. ("Mother") are the parents of one minor child, J.M., born in 2008. Events leading to this appeal began in May of 2018 when the family court entered a final custody order granting Father parenting time every Saturday and

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] David M. is self-represented. The GAL is Kristine Burdette, Esq.

1

Sunday from 10:00 a.m. until 6:00 p.m. As time passed, the parties worked together, and Mother allowed Father to have additional parenting time primarily consisting of every other weekend and some vacations.

On July 5, 2023, Father filed a petition for the modification of custody wherein he sought to have their de facto parenting plan memorialized in a new custody order.[3] Mother filed an answer and a counter-petition to modify child support. In Mother's child support counter-petition, she alleged that Father owed almost $800.00 in arrears on his $193.78 monthly child support obligation, even though he was earning substantially more income than when child support was originally calculated. Sometime in or around August of 2023 Father filed an amended proposed parenting plan. A temporary hearing was held on September 27, 2023, during which a GAL was appointed and the family court adopted the parties' de facto parenting plan.

Sometime thereafter, the GAL filed her first report which stated that the child was sixteen years old and had significant behavioral problems the previous year. The GAL recommended that the 50-50 presumption was rebutted due to the child's firm and reasonable preference and that the child should have parenting time with Father every Friday at 6:00 p.m. until Sunday at 7:00 p.m., in addition to extra time during holidays.[4]

---

[3] A "de facto" arrangement refers to a parenting plan adopted through the common practice of the parties outside four corners of the permanent parenting plan order. West Virginia Code § 48-9-402(b)(1) (2022) provides direction regarding de facto arrangements as follows:

> (b) The court may modify any provisions of the parenting plan without the showing of the changed circumstances required by § 48-9-401(a) of this code if the modification is in the child's best interests, and the modification:
> (1) Reflects the de facto arrangements under which the child has been receiving care from the petitioner, without objection, in substantial deviation from the parenting plan, for the preceding six months before the petition for modification is filed, provided the arrangement is not the result of a parent's acquiescence resulting from the other parent's domestic abuse. . . .

[4] West Virginia Code § 48-9-402(b)(3)-(4) addresses the circumstances under which a court may obtain a child's firm and reasonable preference as follows:

> The court may modify any provisions of the parenting plan without the showing of the changed circumstances required by § 48-9-401(a) of this code if the modification is in the child's best interests, and the modification:
> . . .
> (3) Is necessary to accommodate the reasonable and firm preferences of a child who, has attained the age of 14; or

Father filed an amended proposed parenting plan on or about December 12, 2023. In the amended pleading, he requested restrictions on Mother's parenting for the following reasons: (1) the child's stepfather used corporal punishment; (2) the child's grades were unsatisfactory; (3) Mother was arrested in June of 2023 for public intoxication and domestic battery; and (4) Mother stopped allowing visits when Father filed his original petition for modification. As such, Father requested that Mother either have no visitation or supervised visitation. Father also objected to the GAL's recommended parenting plan and requested that the GAL investigate Mother further. The GAL complied with Father's requests for the most part, but her recommendation that the family court adopt the child's firm and reasonable preference of parenting time for Father every other weekend remained in place.

The final hearing on both petitions was held on March 26, 2024. At that hearing, Father attempted to present evidence in pursuit of sole custody of the child, rather than "every other weekend" as reflected in his July 5, 2023, petition. Mother moved to limit Father's evidence to what was reflected in his petition. The family court granted Mother's motion. The family court permitted the parties to leave the courtroom in an attempt to settle their parenting issues. Afterward, the parties were able to reach a full agreement by which: (1) Mother would remain the designated primary residential parent; (2) Father received alternating weekends during the school year; and (3) the parties would alternate weeks during the summer. The family court also ordered that Father would pay $741.18 in monthly child support. The final order was entered on April 25, 2024.

Father filed a motion for reconsideration on April 29, 2024, alleging that the court miscalculated child support. The family court entered an order on May 7, 2024, denying Father's motion, stating that child support was correctly calculated. Father filed a second motion for reconsideration on May 13, 2024, wherein he alleged that the court's child support calculation was incorrect because his "year to date" amount should have been divided by twelve weeks instead of nine weeks. Father included allegations in his second motion for reconsideration that the child was using marijuana and vaping and asked the court for a new hearing.

On May 20, 2024, Father filed an "Ex Parte Petition for Transfer of Sole Custody and Decision-Making Authority," alleging that the child was using drugs, ran away from home, and had very poor behavior at school. The family court denied Father's petition for ex parte relief by order entered on May 22, 2024, because it included the same issues that the parties reached an agreement on at the final hearing. As for Father's second motion for

---

(4) Is necessary to accommodate the reasonable and firm preferences of a child who is under the age of 14 and, in the discretion of the court, is sufficiently matured that he or she can intelligently express a voluntary preference;

3

reconsideration, the family court entered an order on June 11, 2024, reducing Father's child support to $623.68 per month and denying Father's remaining requests for relief. It is from the April 25, 2024, final order, the May 7, 2024, order denying his first motion for reconsideration, and the June 11, 2024, order, denying, in part, his second motion for reconsideration that Father now appeals.

For these matters, we use the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

Father raises twelve assignments of error on appeal. Several assignments of error are closely related, which we will consolidate. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (allowing consolidation of related assignments of error).

In his first, second, ninth, tenth, and eleventh assignments of error, Father asserts the following: (1) the family court judge made inappropriate comments from the bench; (2) the family court judge failed to recuse herself; (3) the family court judge and the GAL were biased and engaged in *ex parte* communication; and (4) the GAL handled the case poorly. We decline to rule on these five assignments of error, as this Court lacks jurisdiction to hear allegations regarding alleged judicial misconduct or misconduct by a GAL.[5] Additionally, these assignments of error lack any supportive legal authority. *See State v. Sites*, 241 W. Va. 430, 442, 825 S.E.2d 758, 770 (2019) (declining to address an assignment of error that includes no legal authority to support the argument). After a review of the record, the allegations do not rise to the level of a due process violation.

Next, in Father's third, fourth, seventh, and eighth assignments of error, Father contends that the family court abused its discretion when it did the following: (1) excluded his documents from evidence and did not permit his witnesses to testify; (2) did not permit him to seek any relief outside of what was requested in his original petition for

---

[5] The West Virginia Office of Disciplinary Counsel has jurisdiction to hear complaints against judges for violations of the Code of Judicial Conduct and/or complaints against attorneys for violations of the Rules of Professional Conduct.

modification; (3) required the parties to leave the courtroom in an effort to reach an agreement; and (4) caused him to feel pressured to enter into an agreement that may not have been in the child's best interest. These assignments of error lack merit. The record reflects that Father's documents were excluded from evidence and his witnesses were not permitted to testify because he failed to properly serve the opposing side with copies of his evidence and subpoenas. Father was not permitted to seek relief outside of his original petition after the family court properly granted Mother's motion to prevent new arguments from being presented without notice. West Virginia Code § 51-2A-7(a)(1) (2013) gives family courts the power to "[m]anage the business before them[.]" It was within the family court's discretion not only to act as a gatekeeper of evidence and witness testimony, but also to urge the parties to reach a parenting agreement. Thus, we find no error in the family court's decisions as they pertain to these assignments of error.

In Father's fifth and sixth assignments of error, he argues that the family court erroneously miscalculated child support and later wrongfully denied his motion for reconsideration regarding the child support calculation. We decline to rule on these assignments of error, as they are moot. The record reflects that when Father filed his second motion for reconsideration the family court reduced his child support obligation from $741.18 to $623.68.

Lastly, as his twelfth assignment of error, Father asserts that the child's school, Mother, and the GAL stated that the child was doing much better in 2024 than in 2023, which was a misrepresentation of the truth. This argument lacks merit. The clearly erroneous standard of review for a lower court's factual findings is "highly deferential." *Argus Energy, LLC v. Marenko*, 248 W. Va. 98, 105, 887 S.E.2d 223, 230 (2023).

> Demonstrating clear error is no mean feat. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. A party does not meet this burden by suggesting that the findings are 'maybe' or 'probably wrong.' Rather, the challenged factual finding must strike us wrong with the force of a five-week-old, unrefrigerated dead fish.

*Argus*, 248 W. Va. at 105, 887 S.E.2d at 230 (citations omitted).

Father expressed his dissatisfaction and disagreement with many of the family court's rulings, but he ultimately failed to demonstrate how the family court's factual findings are clearly erroneous based on the record or how the family court abused its discretion in applying the facts to the law. While it is well established that courts must

5

provide pro se litigants with certain accommodations,[6] their appeals must still present cognizable legal reasons to justify setting aside a court's ruling on appeal. As such, we find no basis in law to warrant relief on any of Father's assignments of error.

Accordingly, we affirm the family court's April 25, 2024, May 7, 2024, and June 11, 2024, orders.

Affirmed.

**ISSUED:** December 6, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

[6] *See Cottrill v. Cottrill*, 219 W. Va. 51, 55, 631 S.E.2d 609, 613 (2006) (requiring courts to provide "reasonable accommodations" to pro se litigants).